FRED SCHROEDER, SR., ET AL. V. JOHN BLUM, JR.

FILED JUNE 8, 1905.   No. 13,837.

1. **Malicious Prosecution:** EVIDENCE.   In an action for malicious prose-cution, where two complaints were filed in the criminal action, and where one of the defenses is that the defendants made a full and complete statement of all the facts and circumstances bearing upon the guilt of the plaintiff to the proper prosecuting officers, and that the prosecution was carried on in good faith **on** the advice of such officers, it is error to exclude testimony **of** one of the defendants that such disclosure was made before the filing of the second and amended complaint, which was the complaint upon which the plaintiff was bound over to the district court, since this is a good defense *pro tanto.*

2. **Evidence:** THREATS.   Generally, evidence of threats against the prosecutor not communicated to him until after the prosecution has been had are not admissible upon the question of probable cause, but where the prosecuting witness himself testifies to an overt criminal act within his own knowledge, which is denied, corroborative evidence which tends to establish the fact that the act was committed is relevant and material, and it is error to exclude the same.

3. **Instructions.**   In such a case an instruction that facts cannot be considered which existed prior to the institution of the criminal proceedings, which were not communicated to the party institut-ing the prosecution, is erroneous.

ERROR to the district court for Douglas county: GUY R. C. READ, JUDGE. *Reversed.*

*J. J. O'Connor* and *Cooper & Dunn,* for plaintiffs in error.

*Jefferis, Howell & Shotwell, contra.*

LETTON, C.

This is an action for malicious prosecution brought by John Blum, Jr., as plaintiff, against Fred Schroeder. Sr., and Fred Schroeder, Jr. as defendants.   From a verdict and judgment in favor of the plaintiff, the defendants Schroeder prosecute error.   For convenience the parties

will be named plaintiff and defendant as in the lower court. The plaintiff, John Blum, Jr., and the defendant Fred Schroeder, Jr., are cousins, and are both young men. At the time of the alleged transaction out of which the prosecution arose, young Schroeder was 20 years of age, and young Blum a few months older. They both lived near the village of Millard, in Douglas county, and were apparently rival suitors of one Mary Kelsey, who afterwards married young Schroeder. Young Schroeder testifies that on the evening of August 9, 1900, as he was going on horseback from his home a few miles from Millard to that place, he was shot at from a clump of willows by the roadside; that he saw Blum's pony standing there, and saw a man with a white handkerchief around his neck in the bushes. Other witnesses testify that, shortly after Schroeder rode into the village that night, Blum followed also on horseback. Blum testifies that he wore a white handkerchief around his neck that night. There is other testimony corroborative of Schroeder's. Blum denies that he was nearer the place where the alleged shots were fired that night than the village of Millard, and other evidence tends to corroborate this statement. On the 11th of August a complaint was filed before Henry Kelsey, a justice of the peace in Millard precinct, reciting that Fred Schroeder makes complaint that he has just cause to fear and does fear that John Blum, Jr., will unlawfully, maliciously and wilfully shoot him with a gun and kill him; that on divers occasions the said John Blum, Jr., has threatened to take his life; that on the 9th day of August, 1903, the said John Blum, Jr., met him on the public highway in Douglas county, Nebraska, and discharged a gun at him, and that the said John Blum, Jr., unlawfully carries a concealed revolver the greater portion of his time. This complaint was signed and sworn to by both of the Schroeders. A warrant was issued upon this complaint, and Blum arrested. He was brought before the justice and detained for about half an hour, when the personal recognizance of himself and his father was taken,

and the case continued. At the time to which the case was continued he appeared and filed a motion for a change of venue, which was granted, and the cause transferred to one William R. Learn, another justice of the peace in Douglas county. Before the date set for hearing before Justice Learn, the Schroeders, father and son, went to the county attorney of Douglas county and laid the facts before one of his deputies, whereupon an amended and substituted complaint was prepared by the deputy county attorney, and sworn to by the elder Schroeder, which charged that he had just cause to fear and does fear that John Blum, Jr., will unlawfully, maliciously and wilfully commit an offense agai. st the person of Fred Schroeder, Jr., the minor child of th.3 affiant. After the filing of this amended complaint, a hearing was had before Justice Learn, who found there was probable cause, and bound the defendant over to appear before the district court. On November 9, 1901, without the knowledge or consent of either of the Schroeders, the case was *nolled* by one of the deputy county attorneys of Douglas county, and Blum discharged. Thereafter this action was begun.

A number of errors are assigned, but, in the view we take of the case, it will only be necessary to notice one or two. Instruction No. 2 given by the court upon its own motion is complained of. This instruction directed the jury that the burden of proof was upon the plaintiff to establish each of the material allegations of his petition, except so far as have been admitted by the answer of the defendants. We have heretofore criticised adversely the giving of such an instruction as this, since, standing alone, it affords no guide to the jury as to what the material issues are, but in other instructions the main issues in the case were directly and specifically pointed out to the jury.

The jury were instructed that the allegations of the first complaint filed charged the plaintiff with three distinct offenses. The instruction specified the penalty for each offense, and said that the jury might consider the same as though there were three separate complaints filed at the

same time, each one charging one of the several offenses therein charged; keeping in mind on the question of damages, if they found for the plaintiff, that there was but one arrest and but one cause actually pending against the plaintiff at any given time. We are inclined to think that the court erred in this; that the purpose of the complaint was to require Blum to enter into a recognizance to keep the peace, and that the statements that Blum had threatened to take his life, that he met him and discharged a gun at him, and that he carries a concealed revolver a greater portion of the time, were merely matters of evidence improperly inserted in the complaint. No attorney was present when this complaint was filed, and as soon as the facts were laid before the public prosecutor, an amended complaint was filed, omitting these superfluous and redundant allegations.

One of the defenses set up in the answer was that at the time of filing the complaint a full and complete statement of the facts was made to the prosecuting officers of Douglas county, and that the complaint was filed upon the advice of such officers. The defense attempted to prove by young Schroeder that he made a full statement to the deputy county attorney, Mr. Helsley, before the filing of the amended complaint, of all the facts and circumstances with relation to the supposed guilt of Blum, but upon objection this evidence was rejected. An offer to prove was then made, but was rejected by the trial court, to which exception was taken. At a later stage of the trial, however, Mr. Helsley was permitted to testify to the statements that were made to him by the Schroeders, and to the effect that he told them the first complaint was informal, and that a second complaint must be filed, and further, that he advised the filing of the amended and substituted complaint. This might perhaps cure the error committed by the exclusion of the defendants' testimony with reference to the disclosure made to the county attorney before the filing of the amended complaint; and yet, it seems to us, judging from the amount of the verdict, that the jury,

perhaps, were unduly influenced by the adverse rulings of the court upon the admission of the young man's testimony.

The plaintiff having testified in his own behalf, and having denied specifically that he had ever threatened young Schroeder or that he had ever shot at him, was asked upon cross-examination whether or not upon the day that he was arrested he admitted to Miss Kelsey that he had threatened to shoot her and to shoot Fred Schroeder and another party. This testimony was objected to by the plaintiff and excluded. He was also asked whether he had not made threats to one Henry Glissman that he would get even with Fred Schroeder, that he would shoot him, or words to that effect. This testimony also was excluded upon the plaintiff's objection. Glissman was called as a witness and testified that in July, 1900, he had a conversation with young Blum, wherein Blum said, speaking of young Schroeder, "I will get even with him yet, and I will have revenge"; that with that he threw back his coat, slapped his hip pocket, and that the witness saw the butt end of a revolver in his pocket. He further testifies that similar statements were made in another conversation afterwards. On cross-examination Glissman told that he did not communicate these facts to either of the Schroeders until July, 1902, long after the prosecution. At the close of the trial, upon the motion of the plaintiff, all the evidence of the witness Glissman was excluded by the court, and the jury instructed by the 8th instruction not to consider it, for the reason that the matters in relation to which this witness testified were not communicated to the defendants, or either of them, prior to the time of filing the original complaint against the plaintiff, or prior to the time of the filing of the amended and substituted complaint. In these rulings we think the learned trial court erred. The testimony of Glissman that Blum had made threats to shoot young Schroeder before the time that Schroeder testifies to the shooting, or Blum's admission that he had made such threats before this time, was certainly proper testimony for the jury to consider. The

prosecution followed immediately upon young Schroeder being shot at, according to Schroeder's testimony. If this event actually occurred, and the facts were as Schroeder relates, the shooting, in connection with the other circumstances, would constitute probable cause for Blum's arrest upon a peace warrant, and any evidence which tended to corroborate Schroeder's story was relevant and material. The jury might disbelieve Schroeder's testimony, standing alone, but if it was corroborated by testimony that previous to this time Blum had made threats to shoot him, or to get even with him, it might establish the truth of Schroeder's story in their minds. In the absence of any overt act testified to by the defendant as ground for the charge, the truth of which was in dispute, this testimony might, perhaps, have been properly excluded under the rule expressed in *Maynard v. Sigman,* 65 Neb. 590, and this is probably the ground upon which the trial judge refused to allow the testimony to go to the jury; but we think the defendants were entitled to all the evidence offered which tended to prove that young Blum actually attempted to shoot Schroeder before the filing of the complaint, and for this reason its exclusion was prejudicially erroneous.

The same considerations apply as to instruction No. 7, requested by the plaintiff and given by the court. This instruction states, in substance, that whether or not probable cause exists must be determined upon the facts that were known to the party filing the complaint before the filing of the same, and that facts cannot be considered which existed prior to the institution of the criminal proceedings which have not been shown by the evidence to have been communicated to the party instituting the prosecution. Under the circumstances of this case we think this instruction should not have been given.

We recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

AMES and OLDHAM, CC., concur.

8

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.